# EXHIBIT B

Gil-Direct-Kennedy.

1  A. Yes.
2  Q. Now, was this the end of your dealings with
3  Mr. Addarich?
4  A. No, sir.
5  Q. Did he continue to contact you and attempt to get money
6  back?
7  A. Yes.
8  Q. And did you eventually learn that the Professional
9  Standards Division, the PSD, or Internal Affairs, of the
10 Buffalo Police Department was conducting an
11 investigation --
12 A. Yes, sir.
13 Q. -- into this incident?
14 A. Yes.
15 Q. And skipping ahead now a couple weeks to February 2nd,
16 1998, did you have occasion to participate in the execution
17 of a search warrant at 120 Potomac?
18 A. Yes.
19 Q. Showing you Government Exhibit 300 in evidence, is that
20 a search warrant application for 120 Potomac?
21 A. Yes.
22 Q. Search warrant application that you signed?
23 A. Yes, it is.
24 Q. Dated February 2nd, 1998?
25 A. Yes.

Gil-Direct-Kennedy.

1  Q.  Did you lie on that search warrant application?
2  A.  Yes.
3  Q.  Who did you attribute the information contained in that
4  application to?
5  A.  To Cody.
6  Q.  Did the information come from Cody?
7  A.  No, sir.
8  Q.  Why did you lie?
9  A.  We took a shortcut.  It's a lot easier to take a
10 shortcut than actually do an investigation.
11 Q.  Showing you next Government Exhibit 301, is that the
12 actual search warrant you obtained for 120 Potomac?
13 A.  Yes.
14 Q.  Also contains the return?
15 A.  Yes, it does.
16 Q.  Inventory and return, is that -- can you tell the jury
17 what that is?
18 A.  The inventory return, basically what it is is once an
19 actual search warrant is signed by the judge, the judge
20 expects you to -- if you find contraband to report it back
21 to his court.
22 Q.  And you, in fact, did that with Government Exhibit 301?
23 A.  Yes, I did.
24 Q.  And so obviously, then, you did execute that search
25 warrant at 120 Potomac?